Commonwealth, Appellant, *v.* One 1936 Ford Truck, Three Ton.

474

Argued April 18, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Horace A. Segelbaum,* Deputy Attorney General, with him *Claude T. Reno,* Attorney General, and *Albert C. Snively,* Special Deputy Attorney General, for appellant.

*Vincent R. Smith,* for appellee.

Opinion by Parker, J., July 13, 1939:

This is a proceeding in rem instituted by Pennsylvania Liquor Control Board on behalf of the Commonwealth to have adjudged forfeited to the Commonwealth a three-ton Ford motor truck under and pursuant to the terms of §611 of the Pennsylvania Liquor Control Act as re-enacted and amended June 16, 1937, P. L. 1762 (47 PS §744-611). A petition for forfeiture was presented to a court of quarter sessions, an answer was filed by the owner and that court, after hearing, denied the prayer of the petition. Thereupon the Commonwealth took this appeal. We are all of the opinion that the court below erred and that the order must be reversed.

On October 18, 1937, state enforcement officers raided premises in a rural section of Westmoreland County and found an illicit still for the illegal manufacture of liquor having a capacity of several hundred gallons a day. Two employees found on the premises were placed under arrest and while the officers were upon the premises Tony Capone drove the truck in question to the back door of the house where the still was located. On the seat with the driver, who was the owner of the truck, was the owner of the still. The truck was carrying a cargo of granulated sugar and 120 empty five gallon cans of the same type as other cans found on the premises.

The still was located on a farm at the edge of some woods and about one-quarter of a mile from other habitations. It was approached from the main road by a side road and a long lane. The officers saw the truck approaching and when it left the main road at about 10:30 P. M. the headlights were turned off and it proceeded without headlights until the lane was reached when the lights were turned on for an instant, evidently to locate the lane. The truck proceeded with-

out using headlights until it stopped at the still. One Senegal stepped from the truck with Capone and immediately admitted the ownership of the still but attempted to absolve Capone of any culpability.

The court below found as facts that Tony Capone, the owner of the truck, was at the time of his arrest "in charge of and operating the truck sought to be forfeited and had full knowledge of the kind and character of his cargo and knew that the same was to be used in the illegal manufacture of liquor." The facts proved sustained the findings of the court below by evidence that was convincing beyond a reasonable doubt. It is difficult to see how the court could have come to any other conclusion than it did in the finding of fact to which we have referred.

Section 3(a) of the Liquor Control Act (47 PS §744-3) provides that the act "shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth, and to prohibit forever the open saloon; and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose." Section 611 provides in part as follows: "No property rights shall exist in any liquor, alcohol, malt or brewed beverage illegally possessed, or in any still, equipment, material, utensil, vehicle, boat, vessel, animals or aircraft used in the illegal manufacture or illegal transportation of liquor, alcohol, malt or brewed beverages, and the same shall be deemed contraband and shall be forfeited to the Commonwealth ...... If, upon petition as hereinafter provided and hearing before the court of quarter sessions, it appears that any liquor, alcohol or malt or brewed beverage was so illegally possessed, or property so used in the illegal manufacture or transportation of liquor, alcohol or malt or brewed beverage, such liquor, alcohol, malt or brewed beverage or property shall be adjudged forfeited and condemned, and shall be disposed of as here-

inafter provided, unless the court shall otherwise order."
The act then provides for the procedure to be followed
by the court in determining whether property shall be
adjudged forfeited.

It is the contention of the Commonwealth that the
truck in question was being "used in the illegal manu-
facture of liquor" and is therefore subject to forfeiture,
while the owner argues that the transportation of the
articles found upon the truck was not a part of the
illegal manufacture of liquor. The conclusion of the
court below in refusing to confiscate the property is
thus summarized: "While the truck was engaged in
the transportation of sugar and cans, yet to hold that
because a truck is loaded with cans and sugar it may
be confiscated, condemned and sold and the owner
thereby deprived of his property would have very far
reaching results not contemplated by the Act of 1937.
Were we to hold as contended by the Commonwealth,
we can see that a great hardship might be easily visited
upon every grocer in the land, and every merchant or
private person, who had in his possession ingredients
used in the manufacture of liquor, might be subjected
to continual annoyance by Enforcement Officers."

It is well settled that statutes providing for forfeiture
of specific property used in violation of law are con-
stitutional: *Com. v. Bowers*, 304 Pa. 253, 155 A. 605.
This proceeding is in rem and is not technically a
criminal one and the Commonwealth is not required
to do more than prove its averments by a preponder-
ance of the evidence: *Com. v. Confiscated Liquors*, 91
Pa. Superior Ct. 165, 168.

We are of the opinion that the learned court below
in reaching its final conclusion did not correctly apply
the law to the facts found. One of the prime purposes
of the act is the prevention of the manufacture of liquor
illegally. It is a matter of universal knowledge that
such operations are carried on surreptitiously. Stealth
is a part of the operation of manufacture, hence the

slang word "moonshine" intended to describe the product of such operations. The owner of the truck was not merely transporting sugar and cans directly to the still, but he was joining the owner secretly and knowingly in the operation of manufacture. He took the cargo, carefully concealed by a tarpaulin, after night, to the premises; he turned off the headlights of the truck which he was driving and proceeded through the dark by way of the lane to the still. It could not be argued that an employee who would pour the sugar in the still or who would take the product from the still and place it in cans was not engaged in the manufacture of liquor. By the same reasoning, when the owner carried the sugar and cans to the still intending to use them in such manufacturing operation he was engaged in a part of the process of manufacture. Capone knowingly joined and assisted the owner of the still in that part of the process and at that time devoted the use of his truck exclusively to that business. He not only joined in that business in company with the owner of the still, but assisted in performing his part of the work secretly, thus indicating beyond question that he was employing the truck in such operations in the manner in which the business of illegally manufacturing liquor is usually carried on. We have no fears for the effect of this decision on innocent vendors of sugar.

The order of the court below is reversed and the record is remitted to that court with instruction to enter a decree adjudging the truck forfeited sec leg.